<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAKEERAH BOWERS, o/b/o A.B., a minor, | Case No.:  2:17-cv-07102 (PAZ) |
| Plaintiff, | **OPINION** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**APPEARANCES:**

JAMES LANGTON
LANGTON & ALTER, ESQS.
1600 ST. GEORGES AVENUE
PO BOX 1798
RAHWAY, NJ.  07065
        On behalf of Plaintiff

JILLIAN ELIZABETH QUICK
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
PHILADELPHIA, P.A.  19123
        On behalf of Defendant

**PAUL A. ZOSS, United States Magistrate Judge.**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act,

as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Shakeerah Bowers, on

behalf of A.B., a minor child, for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act (42 U.S.C. §§ 1381, et seq.).  Plaintiff appeals from the final decision of the

Administrative Law Judge ("ALJ") denying the application; Defendant, the Commissioner of Social Security ("the Commissioner"), opposes Plaintiff's appeal.[1]  After careful consideration of the record, including the ALJ hearing transcripts, the ALJ's decision, and the pleadings and memoranda of the parties, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f).  For the reasons set forth below, the Court reverses the Commissioner's decision that Plaintiff was not disabled, and remands the case in accordance with the following instructions.

## I.    PROCEDURAL HISTORY

On July 30, 2013, Shakeerah Bowers filed an application for SSI on behalf of her son, A.B. (who is a child under the age of 18), alleging a disability onset date of July 30, 2013.  (R. 155-60.)[2] On January 8, 2014, the Commissioner determined that Plaintiff was not disabled and denied the application.  (R. 77, 90-94 .)  Plaintiff filed for reconsideration, and on June 6, 2014, the application was again denied.  (R. 89, 98-101.)  On April 7, 2016, an Administrative Law Judge held a hearing on Plaintiff's application; Plaintiff was represented by counsel at the hearing.  (R. 34-67.)  On April 15, 2016, the ALJ issued a decision denying Plaintiff's application.  (R. 13-33.)  On July 17, 2017, the Appeals Council denied Plaintiff's request for review, thereby affirming the ALJ's decision as the "final" decision of the Commissioner.  (R. 1-5.)  On September 14, 2017, Plaintiff

---

[1] In March 2018, the U.S. Government Accountability Office informed the President of its determination that Nancy A. Berryhill had exceeded the time limit under the Federal Vacancies Reform Act of 1998 allowing her to serve as the Acting Commissioner of the Social Security Administration without the nomination of a successor.  Accordingly, Ms. Berryhill stepped down as Acting Commissioner and continued to lead the agency from her title of record as Deputy Commissioner for Operations.  In April 2018, Ms. Berryhill resumed her role as Acting Commissioner.  *Patterson v. Berryhill*, No. 18-cv-193 (DWA), 2018 U.S. Dist. LEXIS 99486 (W.D. Pa. Jun. 14, 2018); *see* 5 U.S.C. § 3346(a)(2).

[2] "R." refers to the continuous pagination of the administrative record on appeal.  ECF No. 6.  For convenience, the Court will refer to A.B. as "Plaintiff" and to Ms. Bowers as "Plaintiff's mother."

timely filed this appeal pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). ECF No. 1. On May 2, 2018, Plaintiff consented to have a U.S. Magistrate Judge conduct all further proceedings in the case to disposition pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 11.[3] The case was reassigned to the undersigned Magistrate Judge on March 28, 2019. ECF No. 19.

## II.    LEGAL STANDARD

### A.    <u>Standard of Review</u>

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309 (JLL), 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential one, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*,

---

[3] Defendant has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484 (RBK), 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter*, 650 F.2d at 482. Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a

complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).  A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.  In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays.  *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).  An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits."  *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

### B.    Standard for Awarding Benefits

Under the Social Security Act, a child (i.e., a person under the age of 18) is considered disabled if s/he has a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  20 C.F.R. § 416.905(a).  An impairment is "medically determinable" if it results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques.  Thus, an impairment can be established by objective medical evidence from an acceptable medical source, but cannot be established by a statement of symptoms, a diagnosis, or a medical opinion.  *Id*. § 416.921.

The process for determining a child's claim for SSI involves a three-step sequential inquiry for which the claimant bears the burden of proof.  20 C.F.R. §§ 416.912, 416.924(a).[4]  At each step, the ALJ must consider the combined effect of all the child's medically determinable impairments without regard to whether any single impairment, if considered separately, would be of sufficient severity to proceed to the next step.  *Id.* §§ 416.923(c), 416.924a(b)(4), 416.926a(a) & (c).  The ALJ must consider all evidence in the record, including information from medical sources (such as pediatricians or other physicians; psychologists, qualified speech-language pathologists; and physical, occupational, and rehabilitation therapists) and non-medical sources (such as parents, teachers, and others who know the child).  *Id.* § 416.924a(a).

At Step One, the ALJ decides whether the child is currently engaging in substantial gainful activity.  20 C.F.R. §§ 416.924(a) & (b).  Substantial gainful activity generally is work activity that is usually done for pay or profit and that involves doing significant physical or mental duties. *Id.* §§ 416.972(a) & (b).  If the child is engaging in substantial gainful activity, then the inquiry ends because the child is not disabled.  *Id.* § 416.924(b).

 At Step Two, the ALJ decides whether the child has a medically determinable impairment or a combination of such impairments that is "severe."  20 C.F.R. §§ 416.924(a) & (c).  When deciding whether an impairment is severe, the ALJ must consider the effects of all medically determinable impairments on the child's functioning.  *Id.* §§ 416.924a(b)(1).[5]  An impairment or

---

[4] This case arises from a claim filed before March 27, 2017 and is therefore analyzed by this Court – as it was by the ALJ – under 20 C.F.R. § 416.927.

[5] Factors for evaluating a child's functioning include but are not limited to:  the child's symptoms; how the child compares to other children of the same age who do not have impairments; how well the child can initiate, sustain, and complete activities, including the amount of help or adaptations needed, and the effects of structured or supportive settings; the child's need for extra help from people, equipment, devices, and medications; nature and extent of any adaptations used to enable the child to function; the child's need for structured or supportive settings; the child's use of early intervention and school programs; impact of the

combination of impairments is not severe if the child has a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. *Id*. § 416.924(c). If the child does not have a severe impairment or combination of impairments, then the inquiry ends because the child is not disabled. *Id*.

At Step Three, the ALJ decides whether the child has an impairment or combination of impairments that "meets," "medically equals," or "functionally equals" the severity of any impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(a).[6] If the child has such an impairment or combination of impairments, then the child is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. Otherwise, the child is not disabled. *Id*. § 416.924(d).

When deciding whether an impairment "meets" or "medically equals" a Listing, the ALJ cannot consider the child's functioning or age unless the Listing includes functioning or age among its criteria. 20 C.F.R. §§ 416.924a(b)(1), 416.924b(a)(2) & (3). An impairment "medically equals" a Listing if the impairment is at least equal in severity and duration to the Listing's criteria. *Id*. § 416.926(a).

When deciding whether an impairment "functionally equals" the severity of a Listing, the ALJ must consider the child's functional limitations in terms of six prescribed domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and

---

child's chronic illness; and effects of the child's treatments and medications. *See* 20 CFR §§ 416.924a(b)(2)-(9), 416.924b(a)(1).

[6] Appendix 1 consists of two parts. Part A contains criteria that apply to claimants 18 years of age and over; Part B contains criteria that apply only to claimants who are under 18 years of age. 20 C.F.R. § 416.925(b).

(6) health and physical well-being.  20 C.F.R. §§ 416.926a(b) & (f)-(l).  The ALJ must compare how appropriately, effectively, and independently the child performs activities compared to the performance of other children of the same age who do not have any impairment.  *Id.* §§ 416.924a(b)(1), 416.924b(a), 416.926a(b).  An impairment may affect multiple domains, and a domain may be affected by multiple impairments.  *Id.* § 416.926a(c).  An impairment or combination of impairments "functionally equals" a Listing if it results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.  *Id.* § 416.926a(a).  A "marked" limitation is one which "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(2) ("marked" limitation is "more than moderate' but 'less than extreme").  An "extreme" limitation is one which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  *Id.* § 416.926a(e)(3) ("extreme" limitation is "more than 'marked'," but not necessarily equivalent to "total lack or loss of ability to function").

## III.    ALJ DECISION AND APPELLATE ISSUES

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the July 30, 2013, his application and onset dates.[7]  (R. 5.)  At Step Two, the ALJ found that Plaintiff had the following severe impairments:  attention deficit hyperactivity disorder (ADD), and oppositional defiant disorder (ODD).  The ALJ also found at Step Two that Plaintiff had the following impairments that are not severe:  asthma, minor motor seizures, and a heart murmur.  (R. 19-20.)  At Step Three, the ALJ found that Plaintiff did not have an impairment or combination

---

[7] Regardless of his alleged onset date, the relevant period for Plaintiff's SSI claim begins with his July 30, 2013 application date.  *See* 20 C.F.R. § 416.202 (claimant is not eligible for SSI until, among other factors, the date on which he files an application for SSI benefits); 20 C.F.R. § 416.501 (claimant may not be paid for SSI for any time period that predates the first month he satisfies the eligibility requirements, which cannot predate the date on which an application was filed).

of impairments that meets, medically equals, or functionally equals the severity of any Listing. (R. 20-28.) The ALJ concluded that Plaintiff was not disabled from July 30, 2013 (application date) through April 20, 2016 (decision date). (R. 28.)

Although limited to the ALJ's Step Three findings, Plaintiff's attack is multifold and contends that the ALJ erred in finding that Plaintiff does not have an impairment or combination of impairments that meets, medically equals, or functionally equals any Listing. Plaintiff asks the Court to reverse and remand for payment or, alternatively, for a new hearing.[8] Defendant contends that the ALJ's decision should be affirmed in its entirety because it correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence.

## IV.    SUMMARY OF RELEVANT EVIDENCE

### A.    <u>Treating Providers.</u>

When Plaintiff applied for SSI in July 2013, he was almost 6 years old, recently banned from YWCA camp because of behavioral issues (including that he kicked his counselor and fought with his peers), and just beginning individual therapy sessions at the Child and Adolescent Outpatient Unit of Trinitas Hospital. Plaintiff's mother told the Trinitas providers during the initial evaluation that Plaintiff's behavior at school and at home had grown increasingly aggressive during the 2012-13 school year while Plaintiff was in kindergarten. Plaintiff was soon diagnosed with ADHD and ODD. In September 2013, Plaintiff was prescribed Concerta. In November 2013, Plaintiff was additionally prescribed Risperdal. (R. 21, 314-50, 358-94.) During February and

---

[8] The first paragraph of the "Plaintiff's Argument" section of Plaintiff's brief requests that the Court reverse the ALJ's denial of benefits and remand for payment (ECF No. 17 at 5), but the last paragraph of the same section requests only that the Court remand for a new hearing (*id*. at 7). Similarly, Plaintiff's "Opening Statement" requests a remand for payment (*id*. at 1), but the last paragraph of Plaintiff's brief instead requests a new hearing (*id*. at 23).

March 2014, Plaintiff underwent additional psychological testing at Trinitas Hospital to determine his current levels of cognitive, emotional and adaptive functioning. (R. 420-29.)

In April 2014, Plaintiff's school assigned a dedicated aide who stayed with him all day in his regular first-grade classroom. (R. 314-50, 358-94.) In May 2014, Plaintiff was evaluated by Dr. R. Christopher Stucky (psychiatrist) on behalf of the school. Plaintiff's mother told Dr. Stucky that Plaintiff's behavioral issues had improved since the assignment of the dedicated aide. Dr. Stucky reported that Plaintiff was attentive during the first half of the evaluation but not the second half. After noting that Plaintiff appeared to be doing well on his medications, Dr. Stucky expressed hope that Plaintiff's aide would be a part of the education plan during the 2014-15 school year. (R. 430-35.)

In June 2014, Plaintiff's mother decided that Trinitas Hospital was not a sufficiently therapeutic environment and transferred his mental health treatment to Cooperative Counseling. She told the Cooperative Counseling providers during the initial evaluation that Plaintiff's aggressive, defiant, hyperactive, and impulsive behavior was sporadic since he began taking medications in 2013. For example, although Plaintiff did well academically, she continued to receive calls from the school asking that she immediately pick him up because of bad behavior. Plaintiff's mother also revealed that he was being evaluated by the school's Child Study Team for special needs support. The Cooperative Counseling providers reported that Plaintiff was easily distracted during his initial evaluation and exhibited poor insight and judgment. His medication dosages were adjusted, and he was scheduled for weekly individual/family therapy. (R. 412-19.) In December 2014, Plaintiff was re-evaluated by Dr. Stucky. Dr. Stucky reported that Plaintiff was reasonably attentive during the appointment, was not restless, and was able to focus. Dr.

Stucky observed, however, that "in a classroom there are more distractions and he struggles more with concentration."  (R. 430-35.)

In January 2015, as part of the eligibility determination process for special needs support, Plaintiff was observed in his classroom by a school social worker (R. 436-37) and also underwent another psychological evaluation (R. 445-46).  In February 2015, Plaintiff was deemed eligible for special education and related support because "[h]e is impulsive, disruptive, easily frustrated, anxious and quick to anger" and "requires a specialized program that will address his behavioral, emotional and attentional needs, as well as his academic needs."  (R. 448.)  On February 9, he was transferred to a self-contained behavioral development second-grade classroom where he continued to have a dedicated aide.  He was additionally scheduled to receive weekly 30-minute individual and group counseling sessions with a school social worker.  (R. 22, 438-67.)  On March 11, Plaintiff's family and school officials convened for a meeting to discuss his Individualized Education Program.  (R. 468-94.)[9]

In June 2015, Paige Geraghty (LSW) from Cooperative Counseling sent a letter to Plaintiff's counsel advising that Plaintiff and his family had attended 27 therapy sessions since June 2014.  Ms. Geraghty noted Plaintiff's progress toward his goals of improving anger management skills, alleviating ADHD symptoms, and increasing frustration tolerance.  (R. 22, 419.)  She also noted that in February 2015, Plaintiff began to attend weekly social skills group therapy at Cooperative Counseling "[d]ue to the reports from [Plaintiff's] school that he was having challenges interacting with peers[.]"  (R. 419.)[10]

---

[9] There are education records in the record for the period after March 2015.

[10] There are no treatment notes in the record from Cooperative Counseling.

In April 2016, Plaintiff's mother received a letter from the school district advising that a dedicated aide was assigned to ride the bus with him to ensure his safety and the safety of those around him.  (R. 22, 495-96.)

**B.      Consultative Examiner & State Agency Reviewing Consultants.**

In January 2014, State Agency reviewing consultants opined that Plaintiff did not meet or medically equal Listing 112.11 (Attention Deficit Hyperactivity Disorder).  They also opined that Plaintiff did not functionally equal Listing 112.11 because he had no limitation in the domains of acquiring and using information, moving about and manipulation of objects, and caring for himself; and less than marked limitation in the domains of attending and completing tasks, interacting and relating with others, and health and physical well-being.  (R. 68-76.)  In June 2014, State Agency reviewing consultants affirmed on reconsideration the initial opinions from January 2014.  (R. 78-88.)

In December 2015, Dr. Ernesto L. Perdomo (psychologist) conducted a consultative examination.  Plaintiff's grandmother stated that he had periods of depression and was very hyperactive but was doing much better with medication.  Dr. Perdomo observed that Plaintiff was oriented, well organized, focused, coherent, calm, sociable, and cooperative.  There was no indication of any motor hyperactivity.  Plaintiff demonstrated fair to mildly impaired short-term memory but good long-term memory.  His concentration was good; he was able to give and follow a 4-step instruction.  Dr. Perdomo diagnosed ADHD and ODD (both by history) and noted that Plaintiff's condition affects his ability to function in school.  In a Medical Source Statement Of Ability To Do Work-Related Activities (Mental), Dr. Perdomo opined that Plaintiff had a marked limitation responding appropriately to usual work situations and to changes in a routine work setting.  Dr. Perdomo also opined that Plaintiff had a moderate limitation:  understanding,

remembering, and carrying out complex instructions; making judgments on complex work-related decisions; and interacting appropriately with the public, supervisors, and co-workers.  (R. 22, 405-11).

C.    **Hearing Testimony.**

Plaintiff's mother testified at the April 2016 hearing in response to questioning from both the ALJ and Plaintiff's counsel.  Plaintiff did not have a lot of friends "because he's so violent nobody wants to be friends with him."  He did not accept criticism or correction well from anyone; it caused him to cry, become angry, and shut down.  He was easily distracted and did not play with anything at home for more than a few minutes.  He had trouble finishing what he started.  He could not complete his homework by himself unless an adult sat by his side.  Plaintiff was transferred from a regular second-grade classroom to a self-contained behavioral development classroom in February 2015.  He was transferred back into a mainstream math class in March 2015 because he did well in that subject.  He was then re-transferred into the self-contained math class because his behavior got "out of control" when he did not understand something or needed to concentrate.  When asked by the ALJ to provide specific examples of Plaintiff's out of control behavior, Plaintiff's mother responded that he has flipped a desk, banged his head on a wall, rolled on the floor, and thrown things at his dedicated aide.  Plaintiff was previously suspended from the bus on multiple occasions because of his behavioral issues.  In April 2016, Plaintiff's mother was advised that he would be permanently suspended from the bus unless accompanied by a dedicated aide. The school made that decision after Plaintiff threw a Gatorade bottle at the bus driver "for no reason."  (R. 36-58.)

Plaintiff also testified at the hearing in response to questioning from the ALJ.  He did not like school because he did not like the associated work, except for math.  He thought some students

fought with him because they do not like him.  He sometimes instigated fights at school, but that happened when students called him names.  He liked to ride the bus with his dedicated aide because the other kids left him alone.  (R. 58-67.)

## V.    DISCUSSION

### A.    Local Civil Rule 9.1(e).

The Local Rules for this District require that a plaintiff's brief in a Social Security disability appeal include a separate "statement of facts with reference to the administrative record." L. Civ. R. 9.1(e)(5)(C).  Plaintiff's twenty-three page brief contains a one-paragraph section entitled "Procedural History/Statement of Facts" that contains a brief procedural history of Plaintiff's administrative claim but no statement of facts whatsoever.  ECF No. 17 at 1-2; *see id*. at 3-23 (containing few, if any, record citations other than to the ALJ's decision).  Moreover, Plaintiff's brief fails to comply in other respects with Local Civil Rule 9.1(e)(5).  For example, there is no meaningful "statement of the issues presented for review." L. Civ. R. 9.1(e)(5)(A); *see* ECF No. 17 at 2 (one-sentence section entitled "Issue" stating only that "[t]he primary determination for this Court is whether the Commissioner's decision is supported by substantial evidence").  An additional failing is that counsel's arguments are routinely unnecessarily caustic.

Since May 4, 2018, the undersigned has decided twenty-three Social Security disability appeals in which the plaintiff was represented by Plaintiff's counsel in the present case.  The plaintiff's brief in each of those cases has had similar failings.  It is not the Court's burden to sift through Plaintiff's muddled arguments to determine the bases for appeal and then comb through the record searching for support.  Plaintiff's counsel, the law firm of Langton & Alter, Esqs., has been notified that any brief filed after May 13, 2019 that does not comply with Local Civil Rule 9.1(e) will be rejected, and any fees for re-briefing will not be credited when considering the

reasonableness of fees for successful appeals. *See Little v. Berryhill*, No. 2:17-cv-11708 (PAZ), 2019 U.S. Dist. LEXIS 82127, at *44-46 (D.N.J. May 13, 2019). The Court reiterates such notification. The Court will consider the effect, if any, that Plaintiff's counsel's failure to comply with Local Civil Rule 9.1(e) (and the corresponding burden placed on the Court) should have on any award of fees in this case and will adjust those fees accordingly.

### B.    Step Three:  Meets Or Medically Equals.

At Step Three, the ALJ found that Plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of" Listing 112.02 as to his ADHD and Listing 112.08 as to his ODD. (R. 20.) Plaintiff contends that the ALJ committed reversible error by: (1) evaluating ADHD under Listing 112.02 instead of Listing 112.11; (2) failing to explain adequately why Plaintiff's ODD does not meet Listing 112.08; and (3) failing to determine whether Plaintiff's ADHD and ODD, individually and combined, is medically equivalent to any Listing.[11]

### 1.    Listing 112.11.

Listing 112.11 applies to attention deficit hyperactivity disorder as "[m]anifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity" and is met when *both* paragraphs A *and* B are satisfied. Paragraph A requires *all three* of the following criteria: (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity. POMS DI 34232.011. For children ages 3 to 18, paragraph B requires *at least two* of the following criteria from paragraph B.2. of Listing 112.02:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the

---

[11] The Court analyzes all Listing criteria, as did the ALJ, in effect on April 20, 2016, the date of the ALJ's decision. The applicable criteria are described in Social Security Administration Program Operations Manual System ("POMS") DI 34232.011, *Mental Listings from 01/02/01 to 01/16/17*, available at http://policy.ssa.gov/poms.nsf/lnx/0434232011.

child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

*Id*. Plaintiff argues that the ALJ committed reversible error by failing to consider Listing 112.11 and instead finding:

The claimant's attention deficit hyperactivity disorder does not meet the requirements of listing 112.02 because there is no evidence that the claimant [] has medically documented findings of marked inattention, marked impulsiveness and marked hyperactivity.  Additionally, subsection B of this listing has not been completely satisfied.

(R. 20.)

The omission of Listing 112.11 and the citation to Listing 112.02 – which applies to organic "abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain" – seems to be a typographical error.  The ALJ recited the paragraph A criteria *for Listing 112.11* and the paragraph B criteria for Listings 112.01 and 112.11 *are identical*.[12]  POMS DI

---

[12] By contrast, the paragraph A criteria for Listing 112.02 require medically documented persistence of at least one of the following:  (1) developmental arrest, delay or regression; (2) disorientation to time and place; (3) memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or (4) perceptual or thinking disturbance (e.g., hallucinations, delusions, illusions, or paranoid thinking); (5) disturbance in personality (e.g., apathy, hostility); (6) disturbance in mood (e.g., mania, depression); (7) emotional lability (e.g., sudden crying); (8) impairment of impulse control (e.g., disinhibited social behavior, explosive temper

34232.011.  Moreover, even if the ALJ intended to apply Listing 112.02 instead of Listing 112.11, such error would not automatically warrant remand.  *See Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008) (Step Three finding may be judicially reviewable even if ALJ failed to mention any specific Listing).  The dispositive issue is whether the ALJ's evidentiary discussion – regardless of its placement in the decision, and regardless of the Listings cited in the decision – "illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing."  *Jones*, 364 F.3d at 505 ("the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review"); *see Cosby v. Comm'r of Soc. Sec.*, 231 F. App'x 140, 146-47 (3d Cir. 2007) (ALJ's "fail[ure] to identify the listing that came closest to matching [claimant's] impairments" was not reversible error where ALJ "clearly evaluated the medical evidence") (citing *Jones*).

The Court first turns to paragraph A of Listing 112.11, which requires Plaintiff to satisfy three enumerated criteria.  The ALJ found that Plaintiff had *less than marked* limitation in the domain of attending and completing tasks.  (R. 24.)  This domain considers a child's ability, among other things, to avoid impulsive thinking and focus attention in a variety of situations such as completing assignments, participating in group sports, and reading alone.  *See* 20 C.F.R. 416.926a(h); Social Security Ruling 09-4p, *Title XVI:  Determining Childhood Disability – The Functional Equivalence Domain Of "Attending and Completing Tasks"*, 2009 WL 396033 (S.S.A. Feb. 18, 2009)).  The ALJ's finding for this domain supports a finding that Plaintiff did not satisfy any of the paragraph A criteria because the ALJ found Plaintiff had no marked inattention, no

---

outbursts); (9) impairment of cognitive function, as measured by clinically timely standardized psychological testing; or (10) disturbance of concentration, attention, or judgment.  POMS DI 34232.011.

marked impulsiveness, and no marked hyperactivity.  However, the Court finds that remand is warranted as to Listing 112.11's paragraph A criteria because, as explained in Section V.B. below, the ALJ's finding of less than marked limitation in the domain of attending and completing tasks was not supported by substantial evidence.

The Court next turns to paragraph B of Listing 112.11, which requires Plaintiff to satisfy two of four enumerated criteria.  The ALJ found that Plaintiff had *no* limitation in the domains of acquiring and using information, caring for himself, and health and physical well-being.  (R. 23-24, 26-28.)  The ALJ's findings for these domains support a finding that Plaintiff did not satisfy the first and third paragraph B criteria because he did not have marked impairments in age-appropriate cognitive/communicative functioning and age-appropriate personal functioning.  *See* POMS DI 34232.011, Listing 112.00.C.2. & 3 (explaining that impaired cognitive function is reflected by an IQ of 70 or less and impaired personal function is reflected by self-injurious actions and failure to attend to personal needs).  The ALJ also found that Plaintiff had *marked* limitation in the domain of interacting and relating with others (R. 25), which considers a child's capacity, among other things, to communicate with others, tolerate differences, respond to emotions, and respect social rules.  *See* 20 C.F.R. 416.926a(i); Social Security Ruling 09-5p, *Title XVI: Determining Childhood Disability – The Functional Equivalence Domain Of "Interacting And Relating With Others"*, 2009 WL 396026 (S.S.A. Feb. 17, 2009)).  The ALJ's finding for this domain supports a finding that Plaintiff satisfied the second paragraph B criteria, or marked impairment in age-appropriate social functioning.  *See* POMS DI 34232.011, Listing 112.00.C.2. & 3.  The ALJ further found that Plaintiff had *less than marked* limitation in the domain of attending and completing tasks.  The ALJ's finding for this domain supports a finding that Plaintiff did not satisfy the fourth paragraph B criteria because he did not have marked difficulties in

maintaining concentration, persistence, and pace.  However, as noted above and explained in Section V.B. below, the ALJ's finding for this domain is not supported by substantial evidence. Remand is therefore warranted as to the fourth paragraph B criterion of Listing 112.11.

### 2.    Listing 112.08.

Listing 112.08 applies to personality disorders "[m]anifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness."  Listing 112.08 is met when *both* paragraphs A *and* B are satisfied.  Paragraph A of Listing 112.08 requires Plaintiff to satisfy *one* of seven enumerated criteria:  (1) seclusiveness or autistic thinking; (2) pathologically inappropriate suspiciousness or hostility; (3) oddities of thought, perception, speech, and behavior; (4) persistent disturbances of mood or affect; (5) pathological dependence, passivity, or aggressiveness; (6) intense and unstable interpersonal relationships and impulsive and exploitative behavior;  or  (7) pathological perfectionism and inflexibility.  Paragraph B of Listing 112.08 is identical to paragraph B of Listing 112.11 (and also to paragraph B.2. of Listing 112.02).  POMS DI 34232.011.  The ALJ found that "[w]ith respect to the claimant's oppositional defiant disorder, the requirements of listing 112.08 are not met because sub[s]ections A and B are not completely satisfied."  (R. 20.) Plaintiff argues that the ALJ's Listing 112.08 finding cannot be meaningfully reviewed because it consists of a conclusory statement that lacks evidentiary support.  ECF No. 17 at 12.

Since paragraph A requires that Plaintiff satisfy only one criterion, paragraph A cannot be partially satisfied – it is either completely satisfied or not satisfied.  The Court agrees that the ALJ's Listing 112.08 finding cannot be meaningfully reviewed as to paragraph A because it is impossible to discern without speculation whether the ALJ found that any of the seven paragraph A criteria was satisfied.  But remand is warranted only if the ALJ's error was not harmless.  Plaintiff bears

the burden of explaining how the decision would be different absent the ALJ's error.  *See Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016) (claimant must "explain[] how, even if the ALJ's analysis was lacking, the deficiency was harmful to his claims," including "affirmatively point[ing] to specific evidence that demonstrates he should succeed").  Plaintiff offers no argument and points to no evidence that he satisfies a single paragraph A criterion.  The Court therefore finds that any error in the ALJ's paragraph A finding was harmless.  *See Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (harmless error where claimant complained "in vague terms that certain impairments were not properly compared, separately and in combination, to the listings" without identifying "specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not").

As discussed above regarding Listing 112.11, the ALJ's paragraph B finding can be meaningfully reviewed based on the ALJ's functional equivalence analysis and supporting evidentiary summary.  The ALJ found that paragraph B was not satisfied because Plaintiff satisfied only one criterion (i.e., the second enumerated paragraph B criterion, marked impairment in age-appropriate social functioning).  The Court has already found that remand is warranted as to the ALJ's paragraph B finding because substantial evidence does not support the ALJ's finding that Plaintiff failed to satisfy the fourth criterion, marked difficulties in maintaining concentration, persistence, or pace.  The Court makes the same finding as Listing 112.08.  If it is determined on remand that plaintiff satisfies paragraph B, then the ALJ would be required to include in the decision a paragraph A analysis permits meaningful review.

### 3. Medical Equivalence.

Plaintiff also argues that the ALJ's decision is flawed because it failed to consider whether his ADHD and ODD, individually and combined, medically equal the severity of any Listing.

Specifically, Plaintiff argues that "[t]he sole reference to medical equivalence in the entire decision occurs in the pre-printed, bold-faced and templated heading (finding #3, Tr. 20) which introduces the analysis." ECF No. 17 at 13 & n.5. The Court agrees. However, Plaintiff's brief is silent regarding medical equivalence and points to no specific evidence that his individual or combined impairments are medically equivalent to any specific Listing. The Court therefore finds that any error in the ALJ's Step Three finding as to medical equivalence was harmless. *See*, *e.g.*, *Woodson*, 661 F. App'x at 766; *Holloman*, 639 F. App'x at 814.

    **C.**    **Step Three: Functionally Equal.**

At Step Three, the ALJ also found that Plaintiff did not have "an impairment or combination of impairments that functionally equals the severity of" any Listing because he did not have marked limitations in two domains or an extreme limitation in one domain. (R. 23-28.) As to attending and completing tasks, the ALJ found that Plaintiff had *less than marked* limitation:

> The evidence indicates that the claimant has a history of attention deficit hyperactivity disorder that improved with medication management and counseling services. During December 2, 2015 consultative examination, the claimant's grandmother reported that the child was very hyperactive, but doing much better with medication. At that time, Dr. Perdomo noted that there was no indication of motor hyperactivity; and that he was calm, sociable and cooperative. This is consistent with the undersigned my observations at the hearing, where the claimant sat in the chair without shifting or moving; and he also maintained focus at the hearing.

(R. 24 (record citations omitted).) As to interacting and relating with others, the ALJ found that Plaintiff had a *marked* limitation:

> The claimant has a history of low frustration tolerance, disrespectful behavior and violent tendencies towards other children, secondary to oppositional defiant disorder. While he was never psychiatrically hospitalized for this, he did undergo outpatient therapy and medication management, followed by placement in a self-contained behavioral developmental classroom in February 2015 class with good results. The claimant's social worker noted that the claimant had minimal problems with other students or adults working with him since his placement in the program; and that behaviorally, the claimant has not had any major incidences as those

22

NAV

> previously noted.  The child requires a structured environment, and when given this he is eager to please eager to learn and eager to make friends.  Despite new information received at the hearing that the child recently was given a one to one aid[e] for the bus to contract for his safety and the safety of others, an IEP indicated that the claimant exhibited overall improvement in his behavior in a self-contained behavioral development classroom.

(R. 25 (record citations omitted).)  Plaintiff contends that the ALJ committed reversible error by finding that:  (1) he did not have a marked limitation in attending and completing tasks; and (2) he did not have an extreme limitation in interacting and relating with others.[13]  The Court is unable to determine whether substantial evidence supports either finding because the Court "cannot tell if significant probative evidence was not credited or simply ignored."  *Cotter*, 650 F.2d at 482.

The evidentiary discussion in the ALJ's decision began with "outpatient records from the Trinitas Hospital, dated July 30, 2013 to February 6, 2014, where the claimant received medication management and weekly individual therapy for [ADHD and ODD]."  (R. 21.)[14]  The decision acknowledged that several increases in medication dosages were required over this period based on Plaintiff's mother's continued complaints about his disruptive behavior in school.  The decision noted that by December 6, 2013, Plaintiff's mother reported no issues or concerns, and the clinician noted that Plaintiff was doing well.  (R. 21.)  However, the decision omitted that by February 2014, Plaintiff's dosages were increased after his mother reported that he was acting out in school by impulsively running around and demonstrating oppositional behavior.  The decision also omitted

---

[13] The heading to the functional equivalence section of Plaintiff's brief asserts that Plaintiff also has a marked limitation in "domain a," acquiring and using information.  However, this domain is not mentioned again in Plaintiff's brief.  Nor does Plaintiff challenge the ALJ's finding that he had *no* limitation in the domains of moving about and manipulating objects, ability to care for himself, and health and physical well-being.  The Court therefore finds that Plaintiff has waived any argument that the ALJ committed reversible error as to these four domains.

[14] The ALJ's timeframe is incorrect; the Trinitas Hospital outpatient records covered the period between October 1, 2012 and April 2, 2014.

that in April 2014, Plaintiff's dosages were increased after his mother reported that he remained

provocative and disruptive at school and with his classmates.  (R. 314-50, 358-94.)

The ALJs decision referred to the March 2014 psychological examination at Trinitas

Hospital without acknowledging that the examination was requested by his treating providers in

the Child and Adolescent Outpatient Unit to determine his current levels of cognitive, emotional

and adaptive functioning.  (R. 21.)  The decision summarized the examination findings as follows:

> [C]ognitive testing revealed a full scale I.Q. of 108, which fell within the average
> range.  Personality measures suggested that the claimant might often act without
> thinking, disobey class rules and interrupt activities of individuals and group.
> Those measures had provided evidence for the similarities observed in the
> claimant's behavior in the past.

(R. 21.)   The decision omitted the portions of examining Trinitas psychologist Dr. Lucille

Esralew's report which indicated that during a test of his attention skills, Plaintiff began tasks

before the examiner was able to finish explaining the directions; complained repeatedly that "it's

taking too long;" required frequent redirection to remain on task; and demonstrated a low

frustration tolerance for tasks that were more abstract and imaginative.  (R. 422.)  The decision

also omitted Dr. Esralew's opinion that:

> [Plaintiff] may often become irritated or angered, and confront peers in a manner
> that may often result in reciprocated criticism and rejection.  He may even lie to get
> out of trouble, which can represent a consideration challenge to efforts of discipline.
> These measures have provided evidence for the similarities that have been observed
> on [Plaintiff's] behavior in the past.  However, it was also found that underlying
> such behaviors may be feelings of insecurity, self-doubt, inadequacy, and anxiety.
> Although [Plaintiff] expressed a desire for friends to the examiner during the
> administration, findings reveal that he may also feel a lack of confidence during
> social situations with peers.  His disruptive and seemingly aggressive behaviors
> perpetuate such feelings of ejection and uncertainty, as these behaviors inevitably
> push others away.  [Plaintiffs] difficulty in tolerating frustration and anger is often
> displayed inappropriately, which in turn, leaves him alone and insecure about this
> sense of self, as he clearly observes that others do not want to be around him  His
> attention and difficulties tending to tasks for prolonged periods of time, especially
> if disheartening or challenging (i.e., social situations, abstract tasks, etc.), can also
> contribute to difficulties in tolerating dysregulating feelings of anger frustration,

sadness,, etc.  Left unintended, these feelings can escalate into symptoms of depression or anxiety, especially in situations related to social interaction.

(R. 425.)  The decision similarly omitted Dr. Esralew's recommendations that "given his history of bullying others and aggressive behaviors towards peer as well as authoritative figures (i.e., teachers and counselors), Plaintiff continue to receive services to monitor and assure that he remains compliant in receiving appropriate treatment," and that Plaintiff avail himself of bullying prevention services "to address his maladaptive behaviors towards others and learn adaptive ways to interact effectively with peers."  (R. 420-29.)

The ALJ's decision did not acknowledge the school's decision in April 2014 to assign a dedicated aide to Plaintiff in his regular second-grade classroom.  Nor did the decision acknowledge Dr. Stucky's May 2014 evaluation or December 2014 re-evaluation, during which Plaintiff stated:  that he still got angry when he did not understand material and might rip up his class work, break pencils, or tip over a desk and chair; that he frequently experienced problems during recess and lunch when he got into fights with other children; and that the neighborhood children were nicer than his classmates.  Dr. Stucky opined:  "The difference is probably not with the children, but with [Plaintiff's] attitude.  In school he is angry when he is not able to do the work properly.  Obviously, when he is playing with friends academic work is not an issue."  (R. 430-35.)

The ALJ's decision acknowledged Plaintiff's progress through treatment at Cooperative Counseling from June 2014 to June 2015.  (R. 22.)  However, the decision did not acknowledge that as of June 2014, Plaintiff's mother continued to receive calls from the school asking that she pick him up early because of poor behavior – including that he most recently choked a classmate, left the classroom without permission, and hurt his aide's arm when he pushed her.  (R. 412.)  The decision also did not acknowledge that in February 2015, Plaintiff was transferred to social skills

25

group therapy within Cooperative Counseling "[d]ue to the reports from [Plaintiff's] school that he was having challenges interacting with peers[.]"  (R. 419.)

The ALJ's decision summarized the January 2015 psychological evaluation that Plaintiff underwent to determine his eligibility for special needs support as follows:  "While he initially appeared focused, he became fidgety as the testing continued; and his frustration tolerance started to diminish, as more expectations were being demanded from him."  (R. 22.)  The decision omitted the remainder of that evaluation, which provided:

> [Plaintiff] seemed overwhelmed and struggled to follow directions.  Additionally, he appeared to have little confidence and [was] unsure of his abilities.  [Plaintiff] often needed reassurance from this examiner regarding his performance. Additionally, during the projective portion, [Plaintiff] frequently looked to see if this examiner was looking at him.
>
> Analysis of the projective materials, teacher and parent reports, and observation during testing reveal that [Plaintiff] is [a] young man who has been experiencing many behavioral difficulties for several years now.  He has difficulties with impulse control and regulating his emotions.  He can be defian[t], which at times can become aggressive.  [Plaintiff] also has low frustration tolerance, and this will quickly diminish once he perceives a task as [a] challenge or too much is expected of him.  Furthermore, [Plaintiff] does not always think before he acts, he is impulsive.  In addition, it appears that his behaviors have significantly affected his self-esteem and self-concept.  He feels a sense of helplessness and insecurities in dealing with challenges.  [Plaintiff] tends to withdraw[] from dealing with challenges through his behavior.  He is also quick to anger.

(R. 445-46.)  The decision also omitted the January 2015 report from a school social worker who observed Plaintiff in the classroom:

> Throughout the observation it was noted that [Plaintiff] was an eager and active participant in the class.  [Plaintiff] became frustrated when unable to understand a directive or was unclear about what was expected of him.  When he was calm enough to ask for assistance, he did so, but if not immediately responded to his frustration level grew.  As [Plaintiff's] frustration level increased, so did his anxiety.  [Plaintiff] then became angry and distressed, as evidenced by his crying and verbal statements.  [Plaintiff] was frequently able to calm himself with input from his paraprofessional but with increased amount of incidents his level of frustration would reach a point where [Plaintiff] was unable to bring himself back to work.  [Plaintiff] had difficulty working within the whole class setting as

directives given as a group provided a challenge for him.  He frequently wanted to
have directions clarified and repeated to him specifically from the teaching.  If the
class was moving on in the lesson and he had not yet completed a previous activity
[Plaintiff] became very distressed.

(R. 437.)  Finally, the decision noted that Plaintiff's behavioral issues improved after his February

9 transfer to a self-contained behavioral development class based on the file from a March 11

meeting to discuss Plaintiff's Individualized Education Program, but did not consider the

testimony from Plaintiff's mother about two subsequent incidents.  (R. 22.)

The "missing" evidence listed above is relevant to the analysis of whether – for a

consecutive period of twelve months or more beginning on July 30, 2013 – Plaintiff had a marked

or extreme limitation in the attending and completing tasks domain and/or an extreme limitation

in the interacting and relating with others domain.  The Court does not and cannot express any

opinion about the weight that could or should be ascribed to this evidence.  The Court's role is

limited to determining whether substantial evidence supports the ALJ's decision, and the Court

cannot fulfill its role absent some indication in the ALJ's decision about why the missing evidence

was discounted or rejected.  *See Cotter*, 642 F.2d at 705-06; *Burnett*, 220 F.3d at 121.  The Court

therefore finds that remand is warranted because the Court cannot meaningfully review the ALJ's

functional equivalence finding as to the two challenged domains.

## V.    CONCLUSION

For these reasons, the Court reverses the Commissioner's decision that Plaintiff was not

disabled, and remands the case to the Commissioner for further proceedings in accordance with

the preceding instructions and the accompanying Order.


Dated:   May 29, 2019                                   s/ Paul A. Zoss
At Newark, New Jersey                         PAUL A. ZOSS, U.S.M.J.